1   Peter Rathwell (#002213)
    SNELL & WILMER L.L.P.
2   One Arizona Center
    400 E. Van Buren
3   Phoenix, AZ 85004-2202
    Telephone: (602) 382-6000
4   Attorneys for Plaintiffs
    prathwell@swlaw.com
5

6                IN THE UNITED STATES DISTRICT COURT

7                   FOR THE DISTRICT OF ARIZONA

8   Bertam Music Company; Emi April          No.: 2:08-cv-01099-MEA
    Music Inc., Music Sales Corp.; And Emi
9   Full Keel Music Co.,

10
                                             **PLAINTIFFS' MEMORANDUM IN**
11              Plaintiffs,                   **OPPOSITION TO DEFENDANTS'**
                                             **MOTION TO VACATE DEFAULT**
12       vs                                   **JUDGMENT**

13  SC.GS & CO., LLC, an Arizona limited
    liability company; Sasha Cosic and
14  Dragana (A/K/A Donna) Cosic,

15              Defendants.

16       Plaintiffs, Bertram Music Company, et al., by and through their attorneys, Snell &

17  Wilmer, respectfully submit this Memorandum in Opposition to Defendants' Motion to

18  Vacate Default Judgment.

19                        **INTRODUCTION**

20       Plaintiffs are music publishers and the owners of the copyrights in the four songs

21  that are the subject of this infringement action. Each plaintiff is also a member of the

22  American Society of Composers, Authors and Publishers ("ASCAP"), a performing rights

23  organization, and has granted ASCAP a non-exclusive right to license non-dramatic

24  public performances of its copyrighted musical composition(s). On numerous occasions

25  over the past four-and-a-half years, acting on behalf of Plaintiffs and all other ASCAP

26

Snell & Wilmer
——— L.L.P. ———
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

members, ASCAP advised Defendants of their obligations under the U.S. Copyright Law and attempted to persuade Defendants to either obtain a license agreement from ASCAP authorizing performance of its members' copyrighted music, obtain permission to perform music in the ASCAP repertory directly from ASCAP's members, or cease performance of its members' copyrighted music. The Defendants ignored all such licensing efforts and warnings.[1]

The complaint was filed on June 12, 2008 and served on defendants on June 19, 2008. Defendants chose not to file an Answer and an entry of default was entered against them on July 30, 2008. Defendants were served with Plaintiffs' Notice of Motion, Motion for Default Judgment, and supporting materials on July 10, 2008, but still chose not to respond to the motion in any way. As a result, on September 3, 2008, this Court entered its Final Judgment Order, awarding Plaintiffs statutory damages of $30,000, attorneys' fees and costs of $5,891.80 and injunctive relief.

Defendants have failed to show good cause for their failure to file a timely Answer. Moreover, Defendants have failed to establish, or even assert, a meritorious defense to the underlying action and that there is not ample authority for the statutory damage award Plaintiffs sought, and this Court awarded, in its Final Judgment Order. For these reasons, the Defendants' Motion to Set Aside Default Judgment should be denied. Finally, the Court should award Plaintiffs their additional costs, including reasonable attorneys' fees, incurred in connection with responding to Defendants' motion.

## ARGUMENT

Defendants' Motion To Set Aside Default Judgment ("Defs. Mem.") contains several factual errors and advances arguments which are routinely rejected by courts

---

[1] See Plaintiffs' Memorandum In Support of Its Motion for Default Judgment, pp. 2, 5. See also Plaintiffs Memorandum and Rathwell affidavit supporting an award of attorney's fees and supplemental Rathwell affidavit filed herewith enumerating conversations with the individual defendants.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

RATHWEP\SWDMS\10322142.1

considering the same issues. Defendants have failed to meet the requirements under Rules 55(c) and 60(b) of the Federal Rules of Civil Procedure to vacate the Court's Final Judgment Order. Rule 55(c) provides that where a judgment of default has been entered, the district court may set it aside in accordance with Rule 60(b). Fed. R. Civ. P. 55(c). "[O]nce the court has determined damages and a judgment has been entered, the district court's discretion to vacate the judgment is circumscribed by public policy favoring finality of judgments and termination of litigation." Waifersong, Ltd. Inc. v. Classic Music Vending, 976 F.2d 290, 292 (6th Cir. 1992); Rodgers v. Watt, 722 F.2d 456, 459 (9th Cir. 1983) (en banc). Vacating a default judgment pursuant to Rule 60(b) is an extraordinary remedy that is available only in exceptional circumstances. See Dickerson v. Board of Educ. of Ford Heights, 32 F.3d 1114, 1116 (7th Cir. 1994); Dolezal v. Fritch, 2008 WL 5215335 * 2. (D. Ariz.). To set aside a judgment the burden is on the movant to be within the provisions of Rule 60(b). Franchise Holding II, LLC v Huntington Restaurant Groups, Inc., 375 F.3d 922, 925-926 (9th Cir. 2004). It is often said that a Rule 60(b) motion will be dismissed where it is based only on naked, conclusory allegations rather than clearly substantiated by adequate proof. See, e.g., Weinstein v. Lewis, 34 F3d 1075, 1994 WL 424342 (9th Cir. (Ariz.)); Cassidy v. Tenorio, 856 F.2d 1412 (9th Cir. 1988); Wilkins v Sunbeam Corp., 466 F.2d 714, 717 (10th Cir. 1972), cert. denied, 409 U.S. 1126 (1973).[2]

There must be "good cause" for vacating a default judgment. The good cause analysis considers three factors: (1) whether defendant engaged in culpable conduct that led to the default; (2) whether defendant had a meritorious defense (to the underlying action), and (3) whether reopening the default judgment would prejudice the plaintiffs.

[2] It is generally the practice, when filing a motion to vacate a default judgment, to file a proposed answer to give Plaintiffs a chance to evaluate any purported defenses set forth by Defendants. Defendants did not file a proposed answer; instead, they filed only their motion supported by affidavits.

Franchise Holding II, LLC at 925-926; Pena v. Seguros La Comercial, S.A., 770 F.2d 811, 814 (9th Cir. 1985). The party seeking to vacate the judgment bears the burden of proof that such relief is justified. TCI Group Life Ins. Plan v. Knoebber, 244 F. 3d 691, 697 (9th Cir. 2001). These three factors are disjunctive; the party moving to set aside default must meet all three requirements before the Court may vacate the default. Franchise Holding II, LLC, at 926; Pena, at 815.

**I.     Defendants' Have Not Shown Good Cause For Their Failure To Answer**

     A.     Defendants Engaged In Culpable Conduct That Led To The Default

Defendants do not challenge the validity of the service of the summons and complaint. In fact, defendants freely admit that they knew that this copyright infringement action had been filed against them. The standard for the requisite level of culpable conduct that would allow a court to enter a default judgment is set out quite clearly in Franchise Holding II, LLC.:

> If a defendant 'has received actual or constructive notice of the filing of the action and failed to answer,' its conduct is culpable. Direct Mail Specialists, Inc. v Eclat Computerized Techs., Inc., 840 F.2d 685, 690 (9th Cir. 1988) (quoting Meadows v. Dominican Republic, 817 F.2d 517, 521 (9th Cir. 1987), [cert. denied 484 U.S. 976.] Id. at 926

Defendants, in their Motion To Set Aside Default Judgment, readily admit "Defendants understood that there was a pending matter with ASCAP, but could not comprehend the dire results that not appearing in court to answer the lawsuit would cause."[3] (Defs. Mem. p. 3). This admission alone constitutes the culpable conduct that should rule out the granting of Defendants' Motion To Set Aside Default Judgment.

Defendants attempt to portray themselves as unknowing actors who were unaware

---

[3] In an "ASCAP" case with facts almost identical to the current action, Hamstein Music Company v. Bait Shack Inc., 2001 WL 709402 *2 (D. Kan.), defendants moved to set aside a default judgment based on an assertion that they did not understand the consequences of failing to file an answer to the complaint. In denying defendants' motion, the court held that defendants' reason for failing to answer was not a basis warranting relief under Rule 60(b).

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

1  of their obligations under the Copyright Law and did not understand the serious

2  consequences of their infringements of plaintiffs' copyrights. The record is to the

3  contrary.

4  As set forth in the affidavit of Douglas Jones, ASCAP's Litigation Administrator,

5  beginning in July 2005, ASCAP contacted Defendants dozens of times, by

6  correspondence, telephone calls and personal visits, to offer Defendants a license for their

7  establishment, Va Bene Restaurant (the "Establishment"). (Jones Aff. ¶ 8). As part of

8  these contacts, ASCAP repeatedly explained to Defendants that under the United States

9  Copyright Law they needed to obtain authorization to perform publicly copyrighted songs

10 in the ASCAP repertory. In fact, the letters to Defendants specifically informed them that

11 unauthorized performances of copyrighted musical works in the ASCAP repertory

12 constituted copyright infringement and that Defendants could be liable for damages

13 ranging from $750 to $30,000 for each song they infringed. (Jones Aff. Exhibit A; letters

14 dated September 26, 2006; October 2, 2006; March 14, 2007; and July 19, 2007).

15 In addition to the letters, during at least six conversations with Dragana (a/k/a

16 Donna) Cosic, in-person and by telephone, ASCAP representatives repeatedly explained

17 the need for Defendants to obtain a license for the Establishment. During these

18 conversations, Ms. Cosic alternately stated that she would review the documents she

19 received from ASCAP herself, with Defendant Sasha Cosic, or with her attorney, "Joe."

20 (Jones Aff. Exhibit A; Memos dated October 2, 2006, October 12, 2006; November 8,

21 2006, June 13, 2007, June 21, 2007 and July 31, 2007). During two in-person

22 conversations with Ms. Cosic, on June 13, 2007 and July 31, 2007, she told the ASCAP

23 representative that she believed the bands performing at the Establishment should be

24 responsible for obtaining the necessary permission to perform copyrighted works. Both

25 times, the ASCAP representative explained to Ms. Cosic that the Copyright Law required

26 an establishment owner to obtain permission for all performances of copyrighted music

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

RATHWEP\SWDMS\10322142.1

- 5 -

occurring at the establishment even if the music was performed by bands. In addition, by letter dated July 31, 2007, ASCAP reiterated the point to Ms. Cosic:

> During our discussion, you indicated that it was your contention that the bands who perform at Va Bene should pay the license fees. You should be aware, however, that the law places responsibility for unauthorized performances on those who own and operate the businesses where the music is played, whether or not the musicians or others responsible for playing the music have been instructed to perform copyrighted musical works. (Jones Aff. Exhibit A).[4]

Defendants, therefore, were far from being unaware of their liability under the Copyright Law. They were told of the exact nature of their responsibilities under the law and their potential liability for copyright infringement dozens of times over many years. Despite these repeated and explicit reminders, Defendants refused to obtain an ASCAP license but continued their infringing performances of plaintiffs' works.[5]

Even after plaintiffs obtained evidence of Defendants copyright infringements, Plaintiffs' counsel repeatedly contacted Defendants in an attempt to resolve this matter both before and after the action was filed. (Rathwell letters to Defendants dated April 8, 2008 and May 22, 2008 and memos reflecting telephone conversations May 1, 2008 and May 12, 2008.). Despite these contacts, the parties were never able to reach an agreement

---

[4] It is well established that the owner and operator of an establishment is liable for infringing activities that occur at the establishment. Leigh v. Sakkaris, 215 U.S.P.Q. 113 (N.D. Cal. 1982), Van Halen Music v. Palmer, 626 F. Supp. 1528 (D. Ark. 1985), and Milene Music, Inc. v. Gotauco, 551 F. Supp. 1288 (D.R.I. 1982). The owner of the establishment cannot escape liability for copyright infringement by claiming that the performers are independent contractors, that someone other than themselves was responsible for the selection and performance of plaintiffs' songs. This purported "independent contractor" defense has been uniformly rejected in copyright infringement cases for more than 80 years. Dreamland Ball Room, Inc. v. Shapiro, Bernstein & Co., 36 F.2d 354 (7th Cir. 1929) and Famous Music Corp. v. Bay State Harness Horse Racing and Breeding Association, 423 F. Supp 341 (D. Mass. 1976), aff'd 554 F.2d 1213 (1st Cir. 1977); and Southern Nights Music Company v. Moses, 669 F. Supp. 305 (C.D. Cal. 1987). Nor can an owner escape liability by "hiding his head in the sand like an ostrich" and ignoring advice from ASCAP that he is an infringer. Chi-Boy Music, et al. v. Charlie Club, Inc., 930 F.2d 1224 (7th Cir. 1991).

[5] The court in E Beats Music v. Andrews, 433 F. Supp. 2d 1322, 1328 (M.D. Ga. 2006), rejected the same type of "ignorance" defense presented by Defendants here. The defense that defendant "had no 'reason to believe that his actions constituted an infringement of copyright'" was belied by the facts showing numerous contacts from ASCAP advising that defendants would be sued.

on the amount Defendants would need to pay to resolve this matter. Defendants ultimately rejected Plaintiffs' final settlement proposal and ceased communications with Plaintiffs. Subsequently, Plaintiffs filed for default judgment, which Defendants admittedly knew of but ignored (Defs. Mem. p. 3), and Plaintiffs obtained default judgment on September 3, 2008, awarding them $30,000 in statutory damages, $5,891.80 in costs and attorney's fees and an injunction against further infringing performances of copyrighted works in the ASCAP repertory.

Even after Plaintiffs obtained their default judgment, they remained willing to settle this matter for far less than the entire $35,891.80 judgment amount. Defendants had repeated post-judgment discussions with Plaintiffs' counsel in January, February and March 2009 regarding a settlement which would allow Defendants to pay substantially less then $35,891.80, over a period of months, to satisfy the default judgment. (See Rathwell affidavit.) Once again, Defendants refused to accept Plaintiffs' settlement offer. It is only after this last round of failed settlement discussions that Defendants have moved to set aside the default judgment, over ten months after it was issued by the Court.

To summarize, Defendants were warned of the consequences of their unauthorized performances of copyrighted music for years before the complaint herein was filed; before and after the action was filed Plaintiffs attempted to settle this matter with Defendants; Defendants were given actual notice of the action brought against them as well as the efforts to obtain entry of default against them; nevertheless, they did not respond or appear in this action; even months after default judgment was entered, Defendants refused to accept Plaintiffs' offers to settle. Defendants rejected every chance they were offered to resolve this matter choosing instead to "roll the dice" and allow the Court to resolve this matter by judgment. Defendants' extensive negotiations with Plaintiffs throughout the course of this case point directly to a finding of culpable conduct for failing to respond to

Snell & Wilmer
—— L.L.P. ——
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

1  the complaint and allowing default judgment to be entered against them.[6] Nothing in

2  Defendants' Motion to Set Aside Default Judgment or in Defendants' Affidavit even

3  comes close to a genuine argument that there is good cause for their failure to defend

4  against this action. Defendants' Motion To Set Aside Default Judgment should, therefore,

5  be denied on this basis alone.

## II.   Defendants Have Not Demonstrated A Meritorious Defense

7  Even if Defendants could somehow justify their failure to respond, Defendants'

8  Motion to Set Aside Default Judgment should also be denied because they have not

9  demonstrated a meritorious defense when such a showing is also required to vacate a

10  default judgment. Franchise Holding II, LLC, at 926. Defendants have not set forth any

11  defense to the underlying infringement action. Instead of presenting a defense to their

12  liability for copyright infringement, Defendants' motion focuses almost entirely on the

13  relief the Court has granted to Plaintiffs. In particular, Defendants challenge the amount of

14  the Court's statutory damage award. They do so even though the amount awarded per

15  infringement is within the lower end of the allowable range of $750 to $30,000 under the

16  Copyright Law 17 U.S.C. § 504(c)(1) and the amount of the award is solely within the

17  Court's discretion. (Pltfs. Mem. p. 4-7).

18

19  [6] Defendants have submitted the affidavit of Sasha Cosic in support of their motion. Mr. Cosic
20  asserts that because he was not born in the United States and English was not his first language,
he had no understanding of the situation presented by this case (although he was aware of the
21  infringement action pending against him). While ASCAP sent letters to all Defendants in this
action, Defendant Donna Cosic has been the person that ASCAP and Plaintiffs' counsel has
22  spoken to on numerous occasions. Ms. Cosic clearly has none of the limitations of her husband,
business partner and co-defendant, Mr. Cosic. Donna Cosic engaged in hours of negotiations with
23  ASCAP and Plaintiffs' counsel. An action for copyright infringement is a tort action, and all who
participate in the tortious activity are jointly and vicariously liable as tortfeasors. Screen Gems-
24  Columbia Music, Inc. v. Metlis & Lebow Corp., 453 F.2d 552, 554 (2d Cir. 1972); Halnat Publ'g
Co. v. L.A.P.A., Inc., 669 F. Supp. 933, 935-936 (D. Minn. 1987); Boz Scaggs v. KND Corp.,
25  491 F. Supp. 908 (D. Conn. 1980); Italian Book Corp. v. Palms Sheepshead Country Club, Inc.,
186 U.S.P.Q. 326, 327 (E.D.N.Y. 1975). Ms. Cosic understood exactly what was going on in this
26  case and her husband cannot hide behind an "ignorance" defense when his wife and business
partner so ably represented his interests.

A.    There Is Ample Authority For The Court's Statutory Damages Award

A challenge to the amount of damages awarded by the Court certainly does not meet the requirement that the party seeking to set aside default present a "meritorious defense." Nevertheless, Plaintiffs will explain why the Court's award of $7,500 for each of four infringements was not improper in any way.

The cases cited in plaintiffs earlier Memorandum support a statutory damage award in the range requested by plaintiffs as a deterrent to defendant's infringing conduct. (Pltfs. Mem. pp. 4-7). Although Defendant claims that no such deterrent is needed (Defs. Mem. 2), defendants have continued to refuse to sign a license for the Establishment and pay license fees.  Even after this action was filed almost a year ago, they still have no license, and their current motion makes no indication that they intend to take a license in the future."[7]

Defendants erroneously assert "Plaintiffs in this case appear to have only presented evidence to the court by way of their complaint".  In truth, Plaintiffs' Motion for Default Judgment, supported by affidavits, provides ample evidence of Defendants' knowing and deliberate infringing conduct as well as the facts necessary to support their request for statutory damages.

As previously noted, the uncontroverted affidavit of Douglas Jones, establishes that Defendants were repeatedly offered an ASCAP license for many years to authorize the on-going public performances of ASCAP's members' copyrighted musical works at the Establishment. Despite the dozens of contacts, Defendants refused to obtain an ASCAP license but continued to perform copyrighted works in the ASCAP repertory including works owned by the named Plaintiffs. (Jones Aff. ¶¶  6-8, 13).

Defendants attempt to obfuscate the issue of the appropriate damages by asserting

---

[7] During the course of this litigation the amount defendant would have paid if properly licensed has continued to increase. License fees for Va Bene Restaurant for 2009 are $742.26 -- total fees owed if the establishment were properly licensed to date are now $3,823.11.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

Snell & Wilmer
———— L.L.P. ————
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

that Plaintiffs have alleged only "one incident of copyright infringement" (Defs. Mem. p. 5) and that the amount of fees the Defendants should have paid for an ASCAP license for the Establishment for a single year is the appropriate starting point for calculating an award for statutory damages. In fact, Plaintiffs have asserted "Defendants have continued to perform copyrighted music without permission during the hours Defendants establishment is open to the public for business and presenting musical entertainment." (See, Complaint paragraph XIV (b)). The allegation of repeated infringing conduct is supported by affidavit testimony (Jones Aff. ¶'s 13 and 14).[8]

As a practical matter, Plaintiffs cannot record every instance of Defendants' infringing conduct; the cost of obtaining such evidence would be too high. That is one reason why courts in these types of cases generally award statutory damages equal to a multiple of the license fee defendants would have paid if they had been properly licensed for the *entire* period ASCAP has offered a license -- no specific proof of infringing performances at the establishment on other nights is required. (Pltfs. Mem. 4-7). Nor would it be desirable for ASCAP's members to flood the federal courts with infringement actions every month against restaurant owners such as defendants who infringe on a regular basis. In a word, Defendants' emphasis on the ASCAP license fee only for the year the infringements occurred is misplaced.[9]

Because there is no actual dispute as to the amount of license fees owed by

---

[8] Defendants, in fact, admit that they hired musicians on more than one occasion to perform at the Establishment. (Def. Mem. pp. 2- 4; Cosic Aff. &&4,5)

[9] Defendants citation to EMI April Music v. White, 2009 WL 1468478 (E.D. Va.) in support of their proposition that a single year of license fees is the proper starting point in calculating damages (Def. Mem. p. 4-5) is misleading at best. While, Defendants correctly note that the judge in the EMI case mentions that the $3,500 in statutory damages per infringement he awards is "(slightly more than two times the 2009 licensing fee)," Defendants leave out the rest of the sentence which continues "for a total of $10,500 (which is slightly more than two times the license fees "saved" of $4,508 [the amount owed for the entire period ASCAP has been attempting to license defendants]" Id. As with all the copyright infringement cases cited by Defendants arising out of the unauthorized public performances of copyrighted music works, the courts use the fees owed for the entire period defendants were offered a license not the fees for a single year.

defendants, $3,080.85 (Jones Aff. &12), and the damage amount requested by plaintiffs falls squarely within the statutory parameters, statutory damages of $7,500 per infringement ($30,000 in total) is appropriate and was properly awarded.

      B.    <u>Defendants Alleged Financial Problems are Unsubstantiated and Should Not Diminish The Award of Statutory Damages</u>.

Defendants argue that an award of statutory damages in the amount requested by plaintiffs would create a hardship to a business that is financially unable to pay such an amount. (Defs. Mem. pp. 3-4). Financial information provided by defendants for the years 2005 through 2007 belie this assertion. (See returns appended to Rathwell affidavit filed herewith.)

The joint tax returns for Sasha and Donna Cosic show annual wages of $130,000 for the years 2005 and 2006, and $100,000 for 2007. In 2006, the two individuals had an adjusted gross income of $153,124. In 2007, the adjusted gross income figure increased to $232,986. For the years 2005 through 2007, SC.GS & CO. LLC had gross revenues of between $1,931,092 and $2,067,482. A couple that has an average salary of more than $120,000 over three straight years and a company that has approximately two million dollars in revenues for three straight years can hardly be considered a marginal business, as the defendants allege.

Even if defendants had presented any adequate evidence that their business was unprofitable, courts confronted with similar pleas of poverty in virtually identical copyright infringement actions have acknowledged the irrelevance of such pleas. For example, in <u>Ice Nine Publishing Co., Inc. v. Barnes</u>, 17 U.S.P.Q.2d 1963, 1965 (C.D. Ill. 1990), the court rejected defendant's argument that the infringement of plaintiffs' copyrights was excusable because his business was unprofitable, and it stated that "[t]here is no provision in the copyright act that excuses unprofitable businesses from obtaining copyright licenses."

1    Plaintiffs already have explained why the statutory damages they seek are

2    reasonable and well within the Court's discretion. (Pltfs. Mem., pp. 11-15). There are no

3    material facts in this case which are in dispute. As a result -- and despite defendant's

4    unsupportable protestations of impoverishment -- the court, in its discretion, properly

5    awarded statutory damages of $7,500 per infringement.

6    **III.    Plaintiffs Would be Substantially Prejudiced If the Default Is Set Aside**

7    Plaintiffs respectfully submit that they will be prejudiced if the Court now gives the

8    defendants the opportunity to file an answer asserting meritless defenses — particularly

9    since to date, defendants have spurned all of plaintiffs' representatives' efforts to obtain a

10   license. The course of the case to date has already cost plaintiffs considerable attorneys'

11   fees and out-of-pocket expenses, and further litigation can only result in additional

12   expense (ironically, to be borne ultimately by defendants because of the fee-shifting

13   provision of the Copyright Law, 17 U.S.C. § 505).

14   Finally, there is this additional consequence of further delay in judgment, if

15   Defendants are to be believed, they operate in a tenuous business environment.

16   Restaurants and nightclubs are prone to sudden reversals in fortune and instantaneous

17   demises. There is simply no assurance that if this case is prolonged for six months or so,

18   the defendants will still be operating Va Bene Restaurant. And of course, no business

19   means little or no likelihood of recovery on a judgment.

20   **IV.    Plaintiffs Are Entitled To Additional Attorneys' Fees**

21   Plaintiffs are entitled to an award of additional costs, principally comprising their

22   attorneys' fees incurred since entry of the Final Judgment Order, pursuant to 17 U.S.C.

23   § 505. (**See** cases cited in Pltfs. Mem. pp. 6-8); Hamstein Music Company v. Bait Shack

24   Inc., 2001 WL 709402, (D. Ken.) (after denying defendants' motion to vacate the default

25   judgment, the court concluded that Plaintiffs request for reasonable attorney's fees as the

26   prevailing party in this case were appropriate when defending the motion and set aside the

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

Snell & Wilmer
— L.L.P. —
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

1  judgment. See 17 U.S.C. § 505 (citing a similar decision in another ASCAP case,

2  Girlsongs & Warner Bros, Inc. v. Starkey, 108 F.R.D. 275, 278 (N.D. Cal. 1984));

3  Somerset Songs Publishing v Bertsos, 24 U.S.P.Q.2d 1634, 1635 (N.D. Ill. 1992). In

4  support of their request for additional costs including attorneys' fees, Plaintiffs are

5  submitting herewith the affidavit of attorney Peter Rathwell.

6  <u>**CONCLUSION**</u>

7  Defendants have neither offered good cause for their delay nor presented a

8  meritorious defense to the underlying action. The Court acted within the scope of its

9  authority when it entered a judgment against Defendants awarding Plaintiffs statutory

10  damages of $7,500 for each of four infringements. The Court, therefore, should deny

11  Defendants' Motion to Set Aside Default Judgment. In addition, the Court should award

12  Plaintiffs their additional costs, including attorneys' fees, incurred since entry of the Final

13  Judgment Order.

14  DATED this 16th day of July, 2009.

15  SNELL & WILMER L.L.P.

16

17  By  /s/ Peter J. Rathwell (SB#002213)
    Peter J. Rathwell

18  One Arizona Center, 400 E. Van Buren
    Phoenix, Arizona 85004

19

20  ORIGINAL filed and COPY
    mailed this 16th day of July 2009, to:

21

22  Joseph A. Herbert
    JOSEPH A. HERBERT, P.C.

23  10429 S. 51ST Street, Ste. 250
    Phoenix, AZ 85044

24  Attorneys for Defendants/Judgment Debtors

25  /s/   Lorrie Mose

26